# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| EARNEST TOLBERT, | ) |
| Plaintiff, | ) |
| vs. | ) 1:11-cv-001530-SEB-DKL |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant.[1] | ) |

## Entry Discussing Complaint for Judicial Review

Earnest Tolbert ("Tolbert") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further consideration.**

## I. Background

Tolbert applied for SSI on June 1, 2009, alleging an onset date of March 24, 2009. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted by videoconference on April 20, 2011. Tolbert was present, accompanied by his attorney. Medical and other records were introduced into evidence. Tolbert and a vocational expert testified. The ALJ denied Tolbert's application on May 17, 2011. On October 20, 2011, the Appeals Council denied Tolbert's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Carolyn W. Colvin, in her official capacity only, is substituted as the defendant in this action.

The ALJ's decision included the following findings: (1) Tolbert had not engaged in substantial gainful activity since June 1, 2009, the application date; (2) Tolbert had the following severe impairments: meniscus tear and degenerative changes, right shoulder; osteoarthritis and degenerative disc disease, bilateral hips; and degenerative disc disease, lumbar spine; (3) Tolbert did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Tolbert had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with modifications and limitations: he could lift and carry a maximum of 20 pounds occasionally and lift and carry up to 5 pounds frequently, stand and/or walk about 6 hours in a normal 8-hour workday and sit about 6 hours in a normal 8-hour workday with an option to change position every hour, and push and/or pull to include operation of hand and/or foot controls as restricted by the limitations on carrying/lifting subject to postural limitations of occasionally climbing stairs, ramps, ladders, ropes, or scaffolds and occasionally balancing, stooping, kneeling, crouching, or crawling, and a manipulative limitation of frequently reaching overhead with the right upper extremity; (5) Tolbert was unable to perform any past relevant work; (6) Tolbert was born on May 14, 1959 such that he was defined as a younger individual age 18-49, on the date the application was filed, and he subsequently changed age category to closely approaching advanced age; (7) Tolbert had at least a high school education and was able to communicate in English; (8) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled," whether or not he had transferable job skills; and (9) considering Tolbert's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Tolbert had not been under a "disability," as defined in the Act, since June 1, 2009, the date the application was filed.

## II.  Discussion

### A.  Applicable Law

To be eligible for SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be

established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012). This inquiry asks:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520.

*Id.* at 646. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Hopgood ex rel. L.G. v. Astrue,* 578 F.3d 696, 698 (7th Cir. 2009). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Schmidt v. Astrue*, 496 F.3d 833, 841-42 (7th Cir. 2007) (internal quotation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 841 (internal quotation omitted).

### B. Analysis

In this case, the ALJ concluded that although Tolbert had severe impairments consisting of a meniscus tear and degenerative changes of the right shoulder, osteoarthritis and degenerative disc disease of the bilateral hips, and degenerative disc disease of the lumbar spine, he could perform a significant number of light unskilled jobs in the national economy.

Tolbert argues that the ALJ's decision is not supported by substantial evidence. More specifically, he contends that 1) the ALJ erred in finding Tolbert's mental impairments not "severe," 2) the ALJ erred in not having a psychologist testify at the hearing as to whether Tolbert's mental impairments equaled Listing 12.04, 3) the ALJ erred in rejecting opinions by treating sources, 4) the ALJ's credibility determination was patently erroneous, and 5) the ALJ's RFC assessment failed to include limitations caused by Tolbert's mental impairments. As will be

discussed in this Entry, the court agrees with the claims of error that relate to the ALJ's evaluation of Tolbert's mental impairments.[1]

Tolbert challenges the ALJ's conclusion that Tolbert's mental impairments were not "severe." To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. *See Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010); 20 C.F.R. § 404.1520(c).

Because the ALJ found that Tolbert had other severe impairments, the issue at step two *could* be rendered inconsequential as long as the ALJ considered the non-severe impairments with the severe impairments in determining whether Tolbert could perform work at steps three, four and five. "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile,* 617 F.3d at 926-27. "Therefore, the step two determination of severity is merely a threshold requirement" *Id.* at 927 (internal quotation omitted). "Having found that one or more of [the claimant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003).

The troubling aspect of the ALJ's decision, however, is her failure to incorporate restrictions caused by Tolbert's mental impairments beyond step two of the analysis. The ALJ noted that at times Tolbert had been assessed with mood disorder, depression, and bipolar disorder. (R. at 11). The ALJ noted that the psychological examiner diagnosed cyclothymia (mild form of bipolar manic depressive disorder) and personality disorder. *Id.* The ALJ further noted that although Tolbert had sought mental health treatment, "the evidence shows that he missed appointments, was not compliant with medicinal treatment, or that he has [sic] undergone any long-term treatment." *Id.*

---

[1]Tolbert argues that the ALJ should have summoned a medical expert to render an opinion as to medical equivalence. The Commissioner responds that the ALJ did not err because the opinions of state agency psychologist Dr. Pressner constituted substantial evidence supporting the ALJ's medical equivalence finding at step three. The court agrees. In this case, the proper forms were completed by a state agency psychologist. (R. at 89). Such forms "conclusively establish that 'consideration by a physician ... designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (ALJ may properly rely on Disability Determination and Transmittal forms completed by state agency physicians stating that claimant is not disabled) (quoting *Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir.1989); 61 Fed.Reg. 34466). The ALJ was not required to summon a medical expert to testify as to medical equivalence under these circumstances.

Tolbert points out that a negative inference must not be drawn from a claimant's failure to seek or pursue regular treatment without first considering possible explanations for infrequent or irregular treatment. (Plaintiff's Reply at pp. 7-8, citing Social Security Ruling 96-7p). The Seventh Circuit has noted that "people with serious psychiatric problems are often incapable of taking their prescribed medications consistently." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) (internal quotation omitted). "The administrative law judge's reference to [the claimant's] failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications." *Spiva v. Astrue,* 628 F.3d 346, 351 (7th Cir. 2010).

The ALJ concluded that "[t]here is no evidence that presents the claimant's mental impairments, considered individually and in combination, imposing more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe." (R. at 11). This finding is not supported by substantial evidence. Tolbert points to evidence from the Midtown Mental Health Center dating from June of 2009 through March of 2011 reflecting depression, anxiety, negative "spacey" side effects from medications, rapid mood swings from calm to angry, impaired concentration, inability to finish tasks, isolation, racing thoughts, and impaired sleep. (R. at 564-70). "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Punzio v. Astrue,* 630 F.3d 704, 711 (7th Cir. 2011). The ALJ noted that the consulting mental status examination revealed that Tolbert stopped working not because of severe [physical] impairments but because he had problems with authority figures. (R. at 17, 441). The ALJ failed to evaluate that circumstance in light of Tolbert's mental impairments. Certainly if Tolbert's mental impairments caused him to not be able to work under supervision, those impairments must be taken into account in determining his ability to perform continuing and regular work.

Tolbert contends that the ALJ failed to adequately evaluate the treating evidence from mental health providers. The ALJ supported her mental impairment evaluation with the report of state agency psychologist Dr. Kladder dated November 30, 2009. (R. at 12, 18, 522-24). The ALJ agreed with Dr. Kladder's opinion that Tolbert's mental impairment was "not severe." (R. at 18). The ALJ's reliance on the state agency assessment was not erroneous, but only as to the portion of the record reviewed by Dr. Kladder. It does not appear that Dr. Kladder reviewed Midtown Mental Health Center Clinical Nurse Specialist ("CNS") Lois Hughes' summary dated November 10, 2009. (R. at 524) (noting a lack of psychiatric evaluation from Midtown). In addition, subsequent mental health records showed continuing problems with depression and anxiety, inability to maintain concentration, racing thoughts, and severe mood swings, all to the point that clinicians felt it appropriate to prescribe psychotropic medications. (R. at 564-70).

The November 10, 2009, opinion of treating psychiatric CNS Hughes stated that Tolbert had been receiving services from Midtown Mental Health Center, his diagnoses were Mood Disorder NOS and Alcohol Abuse, he had difficulty with mood instability, anger issues, depressive symptoms and suicidal ideation, and he was tried on Abilify but he stopped taking it because it made him feel like he was in a "stupor." (R. at 564). CNS Hughes noted his functional limitations of mood lability (including suicidal thoughts), reactive anger, sleep disturbance, and energy level fluctuations. *Id.* Her opinion was that "it is highly unlikely Mr. Tolbert would be successful in seeking and maintaining gainful employment at this time." *Id.*

The ALJ gave CNS Hughes' opinion no weight because "Hughes had met with the claimant for the first time on that day and her statement is based primarily on the claimant's subjective statements without any supporting documentation." (R. at 18, citing Exhibits 12F at 8 and 17F at 2). Contrary to the urging of the Commissioner, the ALJ's assessment is not supported by substantial evidence. CNS Hughes' report was plainly a review of Midtown Mental Health Center records. (R. at 564). Moreover, the ALJ's lay conclusion concerning the basis of CNS Hughes' report is not supported by any mental health source opinion. It is well settled that an ALJ may not Aplay doctor@ and reach her own independent medical conclusions. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 702 (7th Cir. 2009); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (AALJs must not succumb to the temptation to play doctor and make their own independent medical findings.@).

Tolbert also argues that the ALJ's credibility determination was improper. "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012) (internal quotation omitted). "When evaluating credibility, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements." *Id.* (internal quotation omitted). "On review, we merely examine whether the ALJ's determination was reasoned and supported." *Id.* (internal quotation omitted). In this case, the ALJ did not consider the entire record, meaning evidence of Tolbert's mental impairments and restrictions therefrom.

Tolbert asserts that the ALJ's credibility determination was erroneous in several ways: a) the ALJ failed to mention the antipsychotic medication Abilify which proved he was totally disabled, b) the ALJ improperly rejected Tolbert's allegations of disability because they were not supported by objective evidence, and c) the ALJ's credibility determination was perfunctory and merely a boilerplate statement. Although the ALJ should have discussed the medications prescribed for mental impairments and any side effects, the court does not agree that being prescribed Abilify "proves disability." While it is true that an ALJ may not reject

-6-

subjective complaints solely because they were not supported by objective evidence, the court finds that this was not the "sole" basis of the ALJ's credibility determination. In addition, the ALJ's credibility determination was not "perfunctory" and did not consist of only boilerplate language.

Nonetheless, the ALJ's credibility determination cannot be affirmed because it did not take into account Tolbert's mental disorder symptoms. In addition to the examples of restrictions caused by his mental impairments referenced above, Tolbert testified to having difficulty concentrating, thinking, and focusing. (R. at 44). He needed to be reminded every day to take his medications. (R. at 236, 265, 273). He did not handle stress well and became angry often. (R. at 269). He and family members also reported that he did not socialize much and had difficulty being around other people because he argued with them. (R. at 239, 267-68, 276). Tolbert's limited work history corroborates these statements. In addition, the ALJ's determination that Tolbert could maintain concentration as evidenced by his ability to sit in front of a television all day is suspect in light of the evidence that his medications and mental disorders restricted his ability to maintain focus and concentrate.[2]

Tolbert's final argument is that the ALJ failed to adequately account for Tolbert's mental impairments in formulating her RFC assessment and in formulating the hypothetical question posed to the vocational expert. Specifically, Tolbert argues that the ALJ did not incorporate the limitations caused by his depression and anxiety. Consistent with the foregoing, the court agrees. On remand, the ALJ shall re-evaluate Tolbert's application taking into account "the total effect of all his medical problems." *Golembiewski,* 322 F.3d at 918.

### III. Conclusion

For the reasons discussed in this Entry, some of the ALJ's conclusions are tainted by legal error and not supported by substantial evidence. Accordingly, the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

---

[2] As a minor side note, the ALJ reasoned that some of Tolbert's testimony lacked consistency. As one example, she compared Tolbert's statement that he enjoyed watching local teams play football and baseball with his testimony that he watched professional sports on television. (R. at 17, 50). There is no inconsistency presented. Indianapolis has local, but professional, football and baseball teams.

On remand, the ALJ shall give Tolbert an opportunity to participate in another hearing. In addition, the ALJ should obtain a more comprehensive evaluation of Tolbert's mental impairments and related functional limitations. The ALJ shall incorporate such findings into her credibility determination, RFC assessment and hypothetical question posed to a vocational expert. The ALJ should not make any adverse inferences based on missed appointments or noncompliance with medications without seeking explanations for such circumstances.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/07/2013

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel